UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| MICHELE KELLER, individually and on behalf of a class of persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LENDVIA, LLC<br><br>Defendant. | Case No.: 6:25-cv-02982-JDA |

## **DECLARATION OF CHASE WEBB**

I, Chase Webb, affirm that the following statements are true and correct as a matter of my personal knowledge or my review of the records of Lendvia, LLC (Defendant), which records are regularly made and maintained in the ordinary course of their business by persons with knowledge at or near the times of the matters recorded therein.

1. I am over the age of eighteen years old. I am under no disability. I have personal knowledge of all facts in this declaration.

2. This declaration is being submitted in support of Defendant's motion to compel arbitration in the above captioned action. I understand that Plaintiff has alleged that Defendant placed telemarketing calls to her in violation of the Telephone Consumer Protection Act and the South Carolina Telephone Consumer Privacy Protection Act.

3.  I am the Vice President of Business Strategy at Lendvia. As VP of Business Strategy, my responsibilities include overseeing lending operations, ensuring regulatory compliance, and developing and executing strategic initiatives for Lendvia.

4.  In my capacity as VP of Business Strategy, I am familiar with the documents and relevant events associated with this matter, including those described further below that pertain to Defendant.

5.  Defendant is a limited liability company organized under the laws of the State of California. Through their websites and other mediums, Defendant offers financial services to the public, including personal loans. One of these websites is www.Lendvia.com (the "Lendvia website").

6.  By virtue of my responsibilities as VP of Business Strategy, I am familiar with Lendvia's telephone solicitation programs and policies and the Lendvia website and the online registration and sign-up process for users to receive financial services. Specifically, I have personal knowledge regarding the appearance and function of the Lendvia website as it has appeared since April 1, 2025, and earlier. I also have personal knowledge of the operation of the systems through which user information is submitted to the Lendvia website and stored by Defendant, including the process to apply for a personal loan and the records that are generated in connection with this process, such as the Verified Consent records described further below.

**Three-Step Registration Process**

7.  To apply for a loan through the Lendvia website, online applicants must complete a three-step registration process. This registration process described below existed at the time of the relevant events to the above-captioned lawsuit, including during January 2025 through present. The images shown below are screenshots of the Lendvia website during the registration process as of April 2025.

8.  In Step 1, individuals would select the amount of financing sought and the purpose of the loan from a dropdown menu of options, as shown in the screenshot below. To progress to Step 2, applicants must click the bright orange "Continue" button at the bottom of the page.



9. At Step 2, applicants would provide their contact information, such as full name, home address, social security number, and email address. To progress to Step 3, users must again click a bright orange "Continue" button at the bottom of the page.



10. As shown in the above screenshot, an arbitration agreement appeared directly above the "Continue" button: "By clicking CONTINUE, I express my understanding and consent electronically via E-sign that I acknowledge, agree and consent to receive email marketing and the Privacy Policy and Terms of Use which includes binding arbitration." The orange text of the "Privacy Policy" and "Terms of Use" contained a hyperlink which,

4

if clicked, opened a new window that would allow users to access the respective "Privacy Policy" or "Terms of Use."

11.     At Step 3, applicants must enter their telephone number. To complete the registration process, applicants must click another bright orange button "Submit" button at the bottom of the page, as shown in the screenshot below.



12.     As shown in the above screenshot, the language above the "Submit" button contained an agreement to arbitrate: "By checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge, agree

5

and consent to the Privacy Policy and Terms of Use which includes binding arbitration . . . ." The language further states that the user is providing "express written consent" to be contacted via "calls and/or text at the phone number provided . . . using any telephone dialing system, prerecorded/artificial voice messages and/or use of an automatic dialing device or system."

13. As with Step 2, the orange text of the "Privacy Policy" and "Terms of Use" contained a hyperlink which, if clicked, opened a new window with the respective "Privacy Policy" or "Terms of Use."

14. Exhibit A is a true and accurate copy of the Terms of Use, which were in force as of April 1, 2025. The Terms of Use contained an "Arbitration Agreement & Class Action Waiver":

> **THESE TERMS PROVIDE THAT ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION. YOU GIVE UP OUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS, YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS. YOUR RIGHTS WILL BE DETERMINED BY NEUTRAL ARBITRATORS AND NOT A JUDGE OR A JURY.**
>
> **You agree that any and all disputes or claims that have arisen or may arise between** . . . Lendvia LLC . . ., including claims under 47 U.S.C. § 227 et seq. and related state statutes, shall be resolved exclusively through final and binding arbitration, rather than in court, except if your claims are under $1000.00 you may assert claims in small claims court, if your claims qualify.

Ex. A at pp. 5–6.

15. This Agreement to Arbitrate further provided users, in lay terms, with an overview of basic arbitration procedures and stated that the arbitration would be conducted by JAMS under its rules pertaining to Consumer-Related Disputes. Ex. A. at p. 6.

16. The Agreement to Arbitrate further provides that the arbitrator "shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate." Ex. A. at p. 6.

17. A user is not allowed to register, obtain, or use services via the Lendvia website without completing the three-step process and agreeing to these terms.

### Defendant's Business Records

18. Defendant stores business records pertaining to all users who complete the online registration process. This includes records showing completion of the three-step registration process on the Lendvia website. These records reflect the date and time of the user activity, the URL for the website that the user visited, other associated metadata, and a video replay of users' exact website activity during the submission process such as inputs, mouse movements, and clicks. Such information is contained on a verified proof of consent form known as a "Verified Consent."

19. To create these records, Defendant has engaged the Verified Consent company, an independent internet lead certification authority that specializes in the online verification of third-party proof of consent. The creation of the Verified Consent is a fully automated process that occurs contemporaneously with the user sign-up based on the user's actions and input.

20. The Verified Consent identifies the date and time of user activity signing up for Defendant's services and/or products, the URL of the website visited, and other

associated metadata. *See* Exhibit B, The Verified Consent "Certificate of Authenticity" of Plaintiff.

21. The Verified Consent contains a video replay showing the user completing the sign-up process, including the user's acceptance of Defendant's Terms of Use and Agreement to Arbitrate. *See* Exhibit C, Video Replay of Plaintiff's April 1, 2025 Visit to Lendvia's Website.

22. The Verified Consent becomes immediately accessible to Defendant upon a user's completion of the application process. Specifically with respect to the Lendvia website, a link to the Verified Consent automatically becomes accessible via the dashboard of the Defendant's internal Customer Relationship Management ("CRM") system upon a user's submission at Step 3.

23. Reliance on the Verified Consent form, generated through the services of the Verified Consent company, is part of the regular course of Defendant's business activities. Records, such as Verified Consent, are created and stored on secure servers for all users who complete the submission process through Defendant's website, not just Miranda Keller (the Plaintiff in this lawsuit). Defendant stores and rely on Verified Consent records to ensure they have obtained users' consent prior to contacting them, including for the purpose of avoiding Telephone Consumer Protection Act and the South Carolina Telephone Privacy Protection Act disputes such as this.

24. I have reviewed the complaint in this action and understand that Plaintiff Miranda Keller alleges that she received unsolicited telephone calls from Defendant

sometime in 2025, in violation of the Telephone Consumer Protection Act and the South Carolina Telephone Privacy Protection Act.

25.    Exhibits B and C are true and accurate copies of the two records that together comprise the Verified Consent for Ms. Keller. They establish that Ms. Keller completed each and every one of the three steps of the registration process to apply for a personal loan through the Lendvia website and consented to be contacted and to mandatory arbitration.

26.    Exhibit B is the "Certificate" tab of the Verified Consent. It shows that, on April 1, 2025 at 8:48 AM, an individual visited the Lendvia.com website via an Apple iOS operating system on a mobile device using the Apple Safari browser.

27.    Exhibit C, which is the "Video" tab of the Verified Consent, is a video replay of the user's exact website activity during the registration process. The replay shows the following information about the user.

28.    At Step 1, the user expressed interest in borrowing $11,000 for the purpose of obtaining a Moving Loan. The below screenshot was taken from Exhibit C.





29.    After clicking "Continue," the user proceeded to Step 2 and provided contact information, including sensitive personal information such as home address, social security number, and email address.

30.    As shown in the screenshot below from Exhibit C, the user here was "Manda" Keller. Ms. Keller provided her name, home address, social security number, and email address.



31.     Ms. Keller then clicked "Continue," expressing her understanding and consent that she acknowledged, agreed, and consented to the Privacy Policy and Terms of Use which includes binding arbitration.

32.     At Step 3, Ms. Keller entered her telephone number, affirmatively checked the box, and clicked submit, as shown in the screenshot below from Exhibit C.



33.     By clicking "Submit," Ms. Keller again expressed her understanding and consent that she acknowledged, agreed, and consented to the Privacy Policy and Terms of Use. As mentioned above, the Terms of Use (Exhibit A) include binding arbitration.

34.     I declare under penalty of perjury that the foregoing information provided in this declaration is true and correct.

Executed on August 12, 2025.

_____