**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| MICHELE KELLER, individually and on behalf of a class of persons and entities similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>LENDVIA, LLC<br><br>Defendant. | Case No.: 6:25-cv-02982-JDA<br><br><br><br>**DEFENDANT LENDVIA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUEST FOR PRODUCTION NO. 10** |

**LENDVIA LLC'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO COMPEL**

Defendant Lendvia, LLC ("Defendant" or "Lendvia"), by and through its respective counsel, hereby submits this response in opposition to Plaintiff's Motion to Compel production of documents responsive to Request for Production No. 10 (the "Motion"), and respectfully states as follows:

**INTRODUCTION**

Plaintiff Michele Keller ("Plaintiff") seeks an order compelling Lendvia to produce "all documents reflecting prior consumer disputes, lawsuits, or complaints in which individuals denied visiting Defendant's website but were attributed Verified Consent records." Pl.'s Mot. to Compel at 3, ECF No. 42. That request has nothing to do with whether Plaintiff visited Lendvia's website on April 1, 2025, entered her personal information, and agreed to Lendvia's Terms of Use. It is

directed instead at the generalized "reliability" of the Verified Consent system across unrelated consumers on unrelated transactions, a theory that is legally irrelevant to contract formation and that no court has ever validated.

Plaintiff's premise is wrong on its face. To upsell the importance of RFP No. 10, she characterizes Lendvia's formation evidence as resting entirely on the Verified Consent records. Pl.'s Mot. at 2. It does not. In support of its motion to compel arbitration, Lendvia submitted four categories of formation evidence: (1) its standardized Terms and Conditions containing the arbitration provision, (2) the declaration of Chase Webb, Lendvia's Vice President of Business Strategy, (3) the Verified Consent certificate, and (4) the corresponding Verified Consent video file that captured Plaintiff's keystrokes as she completed the online application. See ECF No. 22. Plaintiff does not dispute that her correct personal information, including her Social Security number, was entered into Lendvia's online application on April 1, 2025. The Verified Consent system is one corroborating component of Lendvia's formation proof, not the entirety of it.

The Court's January 8, 2026 Text Order limits discovery to the "existence of the purported arbitration agreement." RFP No. 10 exceeds that mandate. It sweeps in Plaintiff's expansive definition of "Defendant" to include all past and present officers, divisions, affiliates, subsidiaries, successors, predecessors, and representatives, ensuring that compliance would require a company-wide records review of an undefined category of "complaints" and "disputes" involving unrelated consumers on unrelated transactions, with no temporal limitation. The request is not relevant to formation, is not proportional to the needs of this limited discovery, and should be denied on three independent grounds.

First, whether other consumers in other transactions disputed attribution of Verified Consent records does not make it more or less probable that Plaintiff personally visited the website,

entered her information, and agreed to the Terms of Use, which contains a binding arbitration clause, among other provisions. The formation question is transaction-specific, and courts in this Circuit have consistently confined limited discovery to the Plaintiff's own agreement. Second, the request is facially overbroad and unduly burdensome: it defines neither "complaint" nor "dispute," imposes no temporal limitation, and extends across Lendvia's entire corporate family. Third, if Plaintiff's actual concern is whether the Verified Consent system accurately attributes online conduct, she has an obvious and more direct discovery path she has not pursued: a Rule 45 subpoena to Verified Consent itself, the third-party vendor that designed, operates, and maintains the attribution technology. Plaintiff's decision to bypass that source in favor of an overbroad request for other consumers' unproven allegations confirms that RFP No. 10 is not reasonably calculated to test system reliability or lead to the discovery of relevant information in this limited discovery context. It is a vehicle for premature class-wide discovery. Accordingly, Plaintiff's Motion should be denied.

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that Lendvia placed unsolicited telephone calls to her in 2025. On that basis, she seeks to pursue a putative class action for violations of the Telephone Consumer Protection Act ("TCPA") and the South Carolina Telephone Privacy Protection Act, S.C. Code Ann. § 37-21-80. See Compl., ECF No. 1. When Plaintiff visited Lendvia's website in April 2025 and submitted a loan application along with her personal information, she agreed to terms providing for mandatory arbitration: "By clicking CONTINUE, I express my understanding and consent electronically via E-sign that I acknowledge, agree and consent to receive email marketing and the Privacy Policy and Terms of Use *which includes binding arbitration*." Def.'s Mem. in Supp. of Mot. to Compel Arbitration ¶¶ 8-10, ECF No. 22 (emphasis added).

Lendvia moved to compel arbitration, submitting four categories of evidence: (1) its standardized Terms and Conditions, (2) the declaration of Chase Webb, (3) the Verified Consent certificate, and (4) the corresponding Verified Consent video file. *See id.* The Court denied the motion without prejudice and directed the parties to conduct "limited discovery concerning the existence of the purported arbitration agreement." *See* Text Order, ECF No. 31 (Jan. 8, 2026). The Court did not authorize discovery into the generalized reliability of the Verified Consent system across Lendvia's platforms or affiliated entities.

Plaintiff thereafter filed her opposition to the arbitration motion, arguing that she never visited the website, that the Verified Consent system is unreliable, and that Lendvia has engaged in a purported "nationwide scheme" of falsifying Verified Consent data. In support of that allegation, Plaintiff cited unrelated lawsuits in other jurisdictions where other TCPA plaintiffs made similar non-attribution claims. No court in any of those cases has found Lendvia's use of Verified Consent to be unreliable or that any record was fabricated. The allegations cited by Plaintiff are unproven accusations advanced by other litigants.

Following the Text Order, Plaintiff served her Second Set of Discovery Requests. RFP No. 10 sought "all documents reflecting prior consumer disputes, lawsuits, or complaints in which individuals denied visiting Defendant's website but were attributed Verified Consent records." Pl.'s Second Set of Discovery Requests, Request No. 10. Plaintiff defined "Defendant" to include not only Lendvia, but also all of its past and present officers, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint ventures, directors, employees, agents, attorneys, and representatives. As a result, RFP No. 10 extends to a broad array of entities, employees, and representatives across Lendvia's corporate family, each of which operates different websites, different application processes, and provides different financial services. Plaintiff's request failed

to define "dispute" or "complaint," requiring Lendvia to unilaterally determine which customer interactions qualify for potential responsiveness, and also conceivably implicates a broader array of online "complaints" that have no relation to this matter.

In its Supplemental Response to Plaintiff's Second Set of Discovery Requests dated March 20, 2026, Lendvia objected to RFP No. 10 on the grounds that it exceeds the Court's limited discovery order, is not relevant to formation, is not proportional to the needs of the case, and seeks confidential third-party information. Counsel met and conferred on April 2, 2026, and April 21, 2026, but were unable to resolve the dispute. Following the April 21 discussion, Plaintiff's counsel circulated a draft motion to schedule a discovery conference. On May 14, 2026, without any prior notice, Plaintiff filed the present Motion.

## ARGUMENT AND CITATION TO AUTHORITY

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discovery "is not limitless," and courts retain discretion to protect parties from "undue burden or expense." *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018). Courts must limit the frequency or extent of discovery if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Discovery should not become a "fishing expedition." *R. Ernest Cohn, D.C., D.A.B.C.O. v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991) (citing *Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1147 (4th Cir. 1988)). Where a motion to compel arbitration is pending and the court has authorized limited discovery, that discovery must be tailored to matters necessary to the disposition of the motion to compel arbitration. *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 390

5

(4th Cir. 2024); *Dillon v. BMO Harris Bank, N.A.*, No. 1:13CV897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) (citing *THI of S.C. at Charleston, LLC v. Vance*, No. 2:13-cv-01483, 2014 WL 896717, at *1–2 (D.S.C. Feb. 26, 2014)). RFP No. 10 fails that standard.

### 1. The Requested Discovery Is Not Relevant and Exceeds the Scope of the Court's Limited Discovery Order.

Prior disputes involving other consumers do not bear on whether Plaintiff Michele Keller visited Lendvia's website on April 1, 2025. That is the only issue before the Court. The Court's January 8, 2026 Text Order confines discovery to the "existence of the purported arbitration agreement." Under Rule 26(b)(1), any discovery within that framework must be relevant to the specific formation question and proportional to what is needed to resolve it. *See Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 152 (4th Cir. 2025) (analyzing contract formation through the "context of [the] transaction"). The Court's order is not a vehicle for broad discovery into unrelated claims, complaints, or alleged systemic issues. Plaintiff's attempt to expand the inquiry to other consumers' disputes exceeds both the scope of the Court's order and the governing law.

#### a. The Requested Discovery Is Not Relevant Under Rule 26(b)(1).

To be "relevant" within the meaning of Rule 26(b)(1), information must relate to a claim or defense and be proportional to the needs of the case. *Mach. Sols., Inc.*, 323 F.R.D. at 526; *Stone v. Trump,* 453 F. Supp. 3d 758, 766 (D. Md. 2020). Relevance "essentially involves a determination of how substantively the information requested bears on the issues to be tried." *Mills v. East Gulf Coal Preparation Co., LLC,* 259 F.R.D. 118, 131 (S.D. W. Va. 2009). The scope of the Court's Text Order is clear: whether Plaintiff herself assented to the agreement at issue. Information about complaints, disputes, or lawsuits involving other consumers' interactions with the Verified Consent system does not bear on that question.

6

Plaintiff attempts to reframe the request as testing the reliability of Lendvia's formation evidence. Pl.'s Mot. at 10. That argument rests on the false premise that the Verified Consent record is the "only evidence" Lendvia has offered. It is not. Lendvia's formation evidence does not rise or fall on the Verified Consent records alone. The Webb declaration establishes the standardized process by which consumers access Lendvia's website and agree to the Terms of Use. The Terms and Conditions themselves contain the arbitration provision. Plaintiff does not dispute that her correct personal information, including her Social Security number, was entered into the application. Taken together, this evidence corroborates formation from multiple angles. Plaintiff's attempt to reduce Lendvia's proof to a single electronic record mischaracterizes the evidentiary record the Court already has before it. Whether other consumers have disputed attribution in unrelated transactions does not make it more or less probable that Plaintiff visited Lendvia's website, entered her personal information, and clicked through the Terms of Use on April 1, 2025.

Plaintiff's framing also exposes the disconnect in her discovery strategy. She contends that the "accuracy" and "efficacy" of the Verified Consent system are central to the formation inquiry. Pl.'s Mot. at 8. If that were true, the proper discovery target would be Verified Consent itself, the third-party vendor that designed, operates, and maintains the system. As Lendvia stated in its discovery responses and during meet and confers with Plaintiff's counsel, Verified Consent possesses the technical specifications, error logs, audit data, and engineering records that would directly address system accuracy. Lendvia is merely a subscriber of the Verified Consent software and does not possess the technical data or information that Plaintiff appears to be targeting. Plaintiff has not served a Rule 45 subpoena on Verified Consent or otherwise sought discovery from the entity that actually controls the information she claims she needs. Instead, she seeks a far less probative category of evidence from Lendvia: other consumers' unproven allegations. Consumer

7

complaints are not a substitute for technical evidence of system functionality. An individual's allegation that she did not visit a website tells the Court nothing about whether the Verified Consent software correctly recorded someone else's visit. Plaintiff's decision to bypass the direct source of the evidence she claims to need, in favor of an overbroad request targeting Lendvia's records of unrelated consumer interactions, further confirms that RFP No. 10 is not a good-faith effort to test system reliability. It is a fishing expedition for class-wide information. *R. Ernest Cohn,* 953 F.2d at 159; *Marker v. Union Fid. Life Ins. Co*., 125 F.R.D. 121, 123 (M.D.N.C. 1989) (holding that requests for "information about other lawsuits or claims" amounted to "nothing more than an out of season fishing expedition").

### b. Courts Have Consistently Confined Limited Discovery to the Plaintiff's Own Agreement.

Courts within the Fourth Circuit emphasize that limited discovery in the arbitration context must be confined to whether the plaintiff herself assented to the agreement and may not extend to agreements involving unrelated individuals. In *THI of South Carolina v. Vance*, the court rejected discovery into arbitration agreements with non-parties, holding that such materials "ha[d] no bearing on an issue of material fact" and noting it was "at a loss to see how other agreements" involving different individuals and facilities could yield admissible evidence on the plaintiff's own contract formation. *THI of S.C. at Charleston, LLC v. Vance*, No. 2:13-CV-01483, 2014 WL 896717, at *1–2 (D.S.C. Feb. 26, 2014). Similarly, in *Fruth*, the court rejected requests targeting internal arbitration policies as overbroad and outside the limited scope of the contract formation question, reinforcing that discovery must be confined to the making of the plaintiff's own agreement, not generalized practices or unrelated materials. *Fruth, Inc. v. OptumRX, Inc.,* No. 2:25-CV-00751, 2026 WL 948604,  at *4 (S.D. W. Va. Apr. 8, 2026). This reasoning squarely forecloses

attempts, like Plaintiff's here, to rely on unrelated disputes to challenge the formation of the specific agreement at issue here.

Plaintiff also points to decisions in other jurisdictions where courts denied motions to compel arbitration involving Lendvia or related entities and the same Verified Consent system. (Pl.'s Mot. at 4-6, citing *Newell*, *Mizel*, *Collins*, and *Aurandt*.)[1] Those decisions do not help Plaintiff here, as each involve case-specific allegations that are not at issue in this matter. *E.g.*, *Newell v. LendVia, LLC*, 2025 WL 2380706, at *2 (E.D. Pa. Aug. 15, 2025) (ordering summary trial on the contract formation question "to determine which version of the Terms of Service were operative" at the time of plaintiff's website visit). None of them addressed the scope of permissible discovery under a limited discovery order. Each involved the separate question of whether the defendant had carried its initial burden to establish the existence of an arbitration agreement, a question this Court has already addressed by ordering limited discovery. More importantly, none found that the Verified Consent system was unreliable or that any record was fabricated. The existence of disputed formation issues in other cases does not establish that the system itself is defective, any more than the existence of disputed handwriting in other cases would establish that pen-and-ink signatures are inherently unreliable. Each formation dispute turns on the facts of the specific transaction, and none of the cited decisions authorizes the kind of sweeping, system-wide discovery Plaintiff seeks here.

In an attempt to preempt the above argument, Plaintiff suggests that the absence of any adverse judicial finding is itself proof that more discovery is needed. That reasoning is circular. The burden to demonstrate relevance rests on the party seeking discovery, not on the party resisting

---

[1] *See Mizel v. LendVia, LLC*, No. 8:25-cv-1034-KKM-AEP, slip op. at 2, 5–6, 17–21 (M.D. Fla. Feb. 17, 2026); *Aurandt v. Range View Management LLC*, No. 3:25-cv-05785-BHS (W.D. Wash. Jan. 8, 2026); *Collins v. Better Debt Sols.*, LLC, No. 8:24-CV-01263-FWS-ADS, 2025 WL 2091064, at *1 (C.D. Cal. June 17, 2025).

it. Fed. R. Civ. P. 26(b)(1). Plaintiff cannot satisfy that burden by pointing to the absence of evidence that might exist if the discovery were granted.

### c. Plaintiff's Motion Misconstrues the UETA.

Plaintiff relies on the Uniform Electronic Transactions Act ("UETA") for the proposition that attribution may be established through "a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Unif. Elec. Transactions Act § 9(a) (1999). From this, Plaintiff argues she is entitled to discover information about the systemic performance of the Verified Consent platform (owned and operated by a nonparty) across all of Lendvia's consumers. That argument misreads the statute.

Attribution under the UETA turns on transaction-specific evidence, not system-wide performance data. *Hill v. Aaron's, Inc.*, No. 7:18-CV-1892-TMC, 2019 WL 13258466, at *7 (D.S.C. Jan. 7, 2019). In *Hill*, the District of South Carolina held that disputes over electronic assent are resolved through record-specific evidence, including unique login credentials, password protections, and audit logs reflecting the timing and circumstances of execution, and rejected speculative claims of system misuse as insufficient to create a genuine dispute. *Id.* at *7–*9. Attribution depends on what occurred in the plaintiff's own transaction, not on alleged deficiencies in the system as a whole.

The UETA's reference to "the efficacy of any security procedure" does not authorize open-ended discovery into system performance across all of Lendvia's affiliated entities and consumers. It identifies one permissible method of establishing attribution. The "security procedure" at issue here is the specific process through which Plaintiff's transaction was recorded, not the aggregate performance of the Verified Consent platform across an indeterminate number of unrelated transactions or interactions. Whether the process worked correctly in Plaintiff's case is answered

10

by the transaction-specific evidence Lendvia has already produced: the Verified Consent certificate, the corresponding video file, the Webb declaration, and the standardized Terms and Conditions.

Plaintiff's own expert declaration reinforces this point.[2] The declaration analyzes transaction-specific evidence: Plaintiff's IP address, carrier, device, and digital footprint. That is precisely the kind of individualized analysis that *Hill* contemplates. Even Plaintiff's own proof confirms that attribution turns on the facts of her individual transaction, not on generalized allegations about system performance across other consumers and other transactions. Plaintiff cannot expand this limited discovery to include a broader inquiry into alleged system unreliability or unrelated user activity.

Plaintiff's authentication argument likewise fails. Lendvia has already produced evidence sufficient to establish authentication at this stage: the Verified Consent certificate, the corresponding video file, and the declaration of Chase Webb, a certifying witness under Federal Rule of Evidence 902(13). Rule 902(13) requires only that electronic evidence be authenticated "as shown by a certification of a qualified person." Fed. R. Evid. 902(13). That requirement has been met. Plaintiff's desire to probe system reliability more broadly through discovery into unrelated consumer disputes does not follow from the authentication rules and would not produce admissible evidence on the formation question.

---

[2] Defendant reserves its rights to challenge Plaintiff's expert's qualifications, methodology, and opinions at the appropriate time. For purposes of this response only, Lendvia addresses his declaration as presented to demonstrate that even Plaintiff's own expert analysis confirms attribution is a transaction-specific inquiry.

11

### d. Plaintiff's "Notice" Theory and Reliance on Unrelated Litigation Do Not Support the Requested Discovery.

Plaintiff's "notice" argument is circular and ignores the dispositive question of contract formation. The argument suggests that Lendvia should have been aware of alleged recurring attribution disputes involving the Verified Consent system before seeking to enforce arbitration. Whether Lendvia had notice that other consumers disputed attribution of Verified Consent records does not bear on whether Plaintiff herself visited the website, entered her personal information, and clicked through the Terms of Use on April 1, 2025. Notice is not a defense to contract formation and falls outside the scope of the Court's limited discovery order.

In support of this theory, Plaintiff relies on *Benedi v. McNeil-P.P.C., Inc.*, which provides no basis to expand the Court's limited discovery order or compel the materials sought in RFP No. 10. *Benedi* addressed the admissibility of notice evidence for substantially similar incidents in a products liability case under a full, unrestricted discovery posture. *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1381 (4th Cir. 1995). That context is materially distinct. A products liability claim, where notice of a defect is a recognized element of the liability analysis, has nothing in common with the binary formation question here: did Plaintiff accept and agree to Lendvia's Terms of Use on April 1, 2025? Evidence of other claims, complaints, or customer interactions is irrelevant to that question, and *Benedi* does not hold otherwise.

Plaintiff further relies on a string of unrelated cases involving Lendvia in multiple jurisdictions. Two of those cases, *Collins* and *Newell*, have already been cited in her briefing as supposed evidence of a nationwide fraud scheme.

No decision in any of the cases cited by Plaintiff has found that Lendvia's application system or the Verified Consent software is unreliable, let alone that any record was fabricated. The supposed "pattern" consists of unproven accusations advanced by other TCPA litigants. Plaintiff

12

cannot import allegations from other cases as if they were established facts, impose them on Lendvia without meeting any burden of proof, and then use them to justify sweeping discovery in this case. *See R. Ernest Cohn*, 953 F.2d at 159.

### e.  Plaintiff's "Probability" Argument Does Not Establish Relevance.

Plaintiff's "probability" argument is self-defeating. Plaintiff contends that prior disputes involving consumers who "likewise denied visiting the website or completing the transaction reflected in Verified Consent records would make it more probable that attribution errors can occur and less probable that the record here conclusively establishes assent." Pl.'s Mot. at 9–10. That reasoning fails for several reasons.

As an initial matter, the cases Plaintiff cites do not all involve Lendvia. Plaintiff's own motion identifies claims against a mix of separate legal entities within what she calls the "Lendvia corporate family," including Range View Management LLC, Better Debt Solutions LLC, and other affiliated companies. Pl.'s Mot. at 4–6. These entities operate different websites, use different application processes, and provide different financial services. *See* Pl.'s Mot. at 5–6 (identifying defendants in *Collins*, *Aurandt*, and *Stirewalt* as entities distinct from Lendvia).[3] Allegations that a consumer in the Central District of California disputed a Verified Consent record generated on a different website operated by a different entity do not bear on whether Plaintiff visited Lendvia's website on April 1, 2025, and agreed to Lendvia's Terms of Use. The only way Plaintiff can stitch these scattered allegations into a "pattern" is through the overbroad "Defendant" definition in RFP No. 10, which collapses every affiliate into a single entity for discovery purposes. That definitional maneuver does not create relevance where none exists.

---

[3] *See Stirewalt v. Range View Management, LLC*, No. 1:24-cv-00180-TDS-JEP (M.D.N.C.).

Plaintiff's brief confirms the point. She expressly states that the prior-complaint evidence "is not offered to test the accuracy, reliability, and trustworthiness of the system itself." Pl.'s Mot. at 9. Instead, she frames the complaints as making it "more probable that attribution errors can occur." Pl.'s Mot. at 9-10. If the complaints are not offered to test reliability, then they do not bear on the formation question, and Plaintiff has no basis under the Court's Text Order or Rule 26(b)(1) to compel their production. Plaintiff cannot disclaim reliance on a reliability theory while simultaneously demanding discovery that is relevant only if system reliability is at issue. The request should be denied on that basis alone.

**2. The Requested Discovery is Overly Broad, Unduly Burdensome, and Seeks Improper Third-Party Information.**

### a. The Request Is Facially Overbroad.

Even if RFP No. 10 were somehow relevant, which it is not, it should not be compelled as it imposes an undue and disproportionate burden on Lendvia. While Rule 26(b)(1) permits discovery of nonprivileged matter relevant to a party's claim or defense, the discovery sought must also be proportional to the needs of the case, considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Mach. Sols., Inc.*, 323 F.R.D. at 526.

Plaintiff's request seeks "all" complaints, disputes, and lawsuits involving Verified Consent but provides no meaningful limitation or definition of key terms. "Complaint" and "dispute" are undefined, leaving Lendvia to make unilateral and subjective determinations about which consumer interactions qualify. Made worse, Plaintiff's definition of "Defendant" extends the obligation to all of Lendvia's affiliated entities (or the "Lendvia corporate family," as stated in

14

Plaintiff's motion), each of which operates different websites, different application processes, and provides different financial services. The request also fails to include a temporal limitation and seemingly includes any "complaint" or "dispute" by any consumer for the duration of each entity's existence. As framed, the request is facially overbroad. It does not target any particular transaction, time period, or identifiable group of individuals, but instead attempts to explore an undefined universe of information across Lendvia's entire corporate family.

The breadth of the request makes compliance unduly burdensome. Given the scope of the "Defendant" definition and the absence of any temporal limitation or defined terms, the scope of the required review is inherently extensive. Lendvia's affiliated entities operate different websites, different application processes, and provide different financial services to consumers, each involving different forms of direct-to-consumer financial services. The request would require Lendvia to search across each entity's records and exercise subjective judgment about which consumer interactions constitute a "complaint" or "dispute," categories the request does not define. These records are not maintained in a manner that allows for simple retrieval. Responding would require a time-intensive, manual review process across multiple systems and entities, with employees exercising judgment to classify and compile responsive materials. Plaintiff's assertion that Lendvia has not identified the specific burden, Pl.'s Mot. at 12, ignores the inherent difficulty created by the request's own deficiencies: a request that fails to define its key terms and imposes no temporal or entity-level limitation cannot be answered without the kind of sweeping, subjective review that Rule 26(b)(1) is designed to prevent.

### b. The Information Plaintiff Claims to Need Is Available from a More Direct Source.

The requested discovery also fails the proportionality analysis because the information Plaintiff claims to need is available from a more direct, less burdensome source. Rule

15

26(b)(2)(C)(i) requires the Court to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff's stated concern is whether the Verified Consent system accurately attributes online conduct to the correct person. Pl.'s Mot. at 8. The entity best positioned to address that question is Verified Consent itself, the third-party vendor that designed and maintains the attribution technology. Verified Consent possesses system architecture documentation, error rates, quality-assurance testing, audit logs, and engineering records that bear directly on system accuracy. Plaintiff acknowledges that responsive materials may be "readily obtainable from [Lendvia's] vendor." Pl.'s Mot. at 12. Yet Plaintiff has not issued a Rule 45 subpoena to Verified Consent or taken any other step to obtain this information from its source. Instead, she asks Lendvia to search across its entire corporate family for an undefined category of "complaints" and "disputes" that, even if produced, would reveal nothing about the system's technical operation. A consumer's assertion that she did not visit a website is an allegation, not evidence of a software defect. Plaintiff cannot impose the burden of a sweeping records review on Lendvia when the information she claims to need is in the hands of a readily identifiable third party she has made no effort to reach.

Finally, Plaintiff suggests that an attorneys'-eyes-only designation resolves any confidentiality concerns for producing sensitive information belonging to other consumers. Pl.'s Mot. at 13. A confidentiality designation does not reduce the burden of locating, reviewing, and producing responsive materials; it adds a designation step on top of that burden. The fundamental problem is not confidentiality. It is that the request asks Lendvia to perform an extensive records review for no legitimate purpose within this limited discovery. Production would also require disclosure of personal information belonging to non-party consumers who have no connection to this litigation and no opportunity to object. Those individuals' privacy interests are an independent

basis for denying production, particularly where the information sought has no bearing on the formation question.

### c.   The Request Is Not Proportional to the Needs of This Limited Discovery.

Even if the requested discovery were relevant, it cannot reasonably be considered proportional to the needs of this limited discovery. The sole issue is whether Plaintiff herself assented to the agreement at issue. Information concerning complaints or disputes by other individuals has no bearing on that individualized question and offers, at most, minimal probative value. That minimal value is far outweighed by the significant burden and expense required to locate, review, and produce the requested materials. In substance, Plaintiff's request attempts to convert this limited discovery into improper class-wide discovery having no connection to the formation issue before the Court.[4]

Plaintiff's request also mirrors her prior discovery efforts. Plaintiff previously sought "all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls," including all related correspondence. *See* Defendant's First Set of Discovery Requests, Request No. 5. That request, like this one, sought sweeping class-wide information unrelated to the narrow question of whether Plaintiff entered into a binding arbitration agreement. The pattern reflects a consistent effort to use the limited discovery phase as a vehicle for premature class discovery.

To the extent RFP No. 10 sweeps in publicly available lawsuit information, Plaintiff already has access to those materials through her own legal research capabilities, as demonstrated by her

---

[4] Even in its appropriate context, this type of class-wide discovery would be improper and disproportional, as it implicates an individualized assessment as to each consumer's assent to Lendvia's Terms of Use and whether each consumer disputes Verified Consent's attribution. As stated above with respect to the *Newell* case, such assessment could implicate a variety of considerations not shared by Plaintiff or the putative class, such as the version of the Terms of Use in effect at the requisite time of assent.

17

ability to identify and cite unrelated lawsuits across multiple jurisdictions in her briefing. It is not appropriate to require Lendvia to compile and produce information equally accessible to Plaintiff.

Courts routinely reject such expansive requests where they require the production of information concerning large numbers of unrelated individuals and impose substantial burdens in relation to their limited relevance. *See, e.g.*, *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 252 (E.D.N.C. 2005); *Mach. Sols., Inc.*, 323 F.R.D. at 528. The same reasoning applies here. The request is overbroad, unduly burdensome, and not proportional under Rule 26(b)(1), and should be denied.

### 3. Damages Under Rule 37 Are Not Warranted

Under Fed. R. Civ. P. 37(a)(5)(A), even if a motion to compel is granted, the Court must not award expenses where the opposing party's position was substantially justified or where an award would otherwise be unjust. *Hare v. Comcast Cable Commc'ns Mgmt., LLC*, 564 F. App'x 23, 24 (4th Cir. 2014).

Lendvia's objections were substantially justified. They were not boilerplate; each was grounded in the text of the Court's January 8, 2026 Text Order, the governing Rule 26(b)(1) standards, and the specific deficiencies in RFP No. 10. Lendvia explained that the request improperly sought sweeping information concerning the purported "reliability" of a system used across its platforms and affiliated entities, far beyond the narrow issue of Plaintiff's assent, and that it lacked any meaningful limitation, effectively seeking improper class-wide discovery. Lendvia consistently articulated these objections in its written responses and during the April 2 and April 21, 2026 meet-and-confer discussions.

There are also independent circumstances that make a fee award unjust. Plaintiff filed the present Motion on May 14, 2026, without prior notice, following the April 21 meet-and-confer at

18

which Plaintiff's counsel had circulated only a draft motion to schedule a discovery conference. That procedural shortcut bypassed the ordinary notice expectations of the meet-and-confer process. Awarding fees against a party whose objections are grounded in the Court's own Text Order, in favor of a party who filed without notice, would be unjust under Rule 37(a)(5)(A). Accordingly, no fee award is appropriate.

## Conclusion

For the reasons set forth above, Lendvia respectfully requests this Court to deny Plaintiff's Motion to Compel and deny Plaintiff's request for a fee award.

This 1st day of June 2026.

s/ Chris Henry
Chris Henry (Fed. Bar No. 14587)
Susie Lloyd (Fed. Bar No. 12181)
Parker Poe Adams & Bernstein LLP
620 S. Tryon St., Ste. 800
Charlotte, NC 28202
Email: chrishenry@parkerpoe.com
        susielloyd@parkerpoe.com
Tel: (704) 335-9527
*Counsel for Defendant*

19

**CERTIFICATE OF SERVICE**

I certify that on June 1, 2026 a true copy of the above Brief in Opposition to Plaintiff's Motion to Compel were served on all counsel of record pursuant to the electronic filing manager.

/S/ Chris Henry_____
Chris Henry
chrishenry@parkerpoe.com